# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BARRY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | 12CV1048 |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barry Brown brought this action pursuant to 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act, to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance under Title II and Title XVI of the Social Security Act. (Doc. #2.) The administrative record was certified to the Court for review.[2] The parties filed cross-motions for judgment on the pleadings. (Docs. #9, 14.) For the reasons stated below, Mr. Brown's Motion for Judgment on the Pleadings is DENIED, and Defendant's Motion for Judgment on the Pleadings is GRANTED.

---

[1] Acting Commissioner of Social Security Carolyn W. Colvin is substituted for Michael Astrue, the named Defendant at the time the instant action was filed. See Fed. R. Civ. P. 52(d).
[2] All references to the administrative record are noted as "A.R."

In May 2008, Mr. Brown filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplement security income, alleging on onset date of December 15, 2007. (A.R. 54-55.) These claims were denied initially and upon reconsideration (id. at 58-71), after which Mr. Brown requested a hearing (id. at 75-73). On January 25, 2011, Mr. Brown and his attorney appeared before an Administrative Law Judge ("ALJ") who heard testimony from Mr. Brown. (Id. at 27-53.) In his decision dated March 17, 2011, the ALJ found Mr. Brown not disabled. (Id. at 12-20.) The ALJ's decision became the Commissioner's final decision for purposes of judicial review when the Appeals Council denied Mr. Brown's requested review. (Id. at 1-6.)

I.

In the instant action, Mr. Brown argues that the ALJ committed legal error when he failed to obtain vocational expert testimony despite Mr. Brown's alleged significant non-exertional limitations. He also argues that the ALJ erred when he failed to consider Mr. Brown's spondylosis of the thoracic spine a severe impairment.

Federal law authorizes judicial review, albeit "extremely limited" in scope, of the Social Security Commissioner's denial of social security benefits. See 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561

2

(4th Cir. 2006); Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "[A] reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "The issue before [the Court], therefore, is not whether [the plaintiff] is disabled, but whether the ALJ's finding that [the plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 586 (4th Cir. 1996). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). This Court does not re-weigh evidence or make credibility determinations. Id. Here, not only is there substantial evidence to support the ALJ's findings, but the findings were based upon a correct application of the law.

II.

A.

First, Mr. Brown argues that the ALJ erred when he used the Medical Vocational Guidelines ("Grids") mechanically, rather than as a framework, and failed to obtain vocational expert testimony in light of Mr. Brown's non-

3

exertional limitations. In support of his argument, he alleges that his depression, which he acknowledges the ALJ found as severe and included in his Residual Functional Capacity ("RFC") finding, other mental impairments, and physical pain cause "several non-exertional limitations." (Doc. #10 at 5.) For example, he cites treatment for depression, anxiety attacks, and insomnia at Eastern Randolph Medical Center from September 2009 to October 2010. (Id. citing A.R. 379-84, 419-24, 439-46.) He notes that in November 2009, his treating physician, Dr. Jagiit Sandhu, determined that Mr. Brown's pain and other symptoms would interfere with his attention and concentration needed to perform simple work tasks and identified depression, somatoform disorder, and anxiety as psychological conditions that affected his physical condition. (Id. citing A.R. 333-38.) In sum, according to Mr. Brown, the ALJ was required to use the Grids as one factor, among others, specifically including the testimony of a vocational expert, to determine if Mr. Brown is disabled.

The Grids "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and [RFC]." Grant v. Schweiker, 699 F.2d 189, 191-92 (4th Cir. 1983). However, the Grids only consider a claimant's exertional impairments. Id. at 192. Therefore, where a claimant

4

has exertional and non-exertional impairments, the Grids are not conclusive. Id. Instead, the ALJ must give "full individualized consideration . . . to all relevant facts of the case[,]" particularly when non-exertional impairments "further narrow the range of jobs available to the claimant, considering his exertional impairments." Id.; see also Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (noting that the Grids serve as guidelines when a claimant suffers from exertional and non-exertional limitations). "[N]ot every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids. The proper inquiry under Grant is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." Walker, 889 F.2d at 49 (internal citation omitted). When a claimant's non-exertional limitations do not erode his occupational base, the testimony of a vocational expert is not required. See Adkins v. Astrue, No. 3:10CV60-HEH, 2011 WL 652508, *3 (E.D. Va. Feb. 10, 2011).

B.

Although Mr. Brown directs the Court to the Physical Residual Functional Capacity Questionnaire that Dr. Sandhu completed in November 2009, Dr. Sandhu noted in that Questionnaire that he had only two contacts with Mr. Brown since September 30, 2009 and had not seen him prior to

5

that since March 1999. (A.R. 333; see also id. at 435-38.) He also contradicted himself when he circled "Incapable of even 'low stress' jobs" but then wrote, "I have not evaluated him for this kind of thing." (Id. at 334. Cf. id. at 18 ("As to Dr. Sandhu's partially completed questionnaire, the undersigned [ALJ] notes that it is not clear who circled the items in Exhibits 7F and 8F, since the doctor seemed to indicate that he had not evaluated the claimant regarding specific work-related functional limitations.").) More often, though, in response to questions concerning Mr. Brown's functional limitations resulting from impairments, Dr. Sandhu did not answer as directed but acknowledged that he had not evaluated Mr. Brown for those limitations. (Id. at 335-38.) As a result, the ALJ properly considered Dr. Sandhu's opinions equivocal and did not give them controlling weight. (Id. at 19.) Yet, the ALJ acknowledged that the records showed that Mr. Brown had been treated by his primary care physicians for consistent symptoms of depression and chronic somatic complaints since 2008. (Id. at 17 (citing Exs. 8F, 12F, 15F, 16F, 18F).)

In light of this medical evidence, Mr. Brown is correct that the Grids are not conclusive, because of his non-exertional limitations. The ALJ noted as much in his opinion. (A.R. 20 ("If the claimant had the [RFC] to perform the full range of light work or sedentary work, considering the claimant's

6

age, education, and work experience, a finding of 'not disabled' would be directed by [the Grids]. However, although the additional limitations have some effect on the occupational base of unskilled light work, they have little or no effect on the occupational base of unskilled sedentary work. A finding of 'not disabled' is therefore appropriate under the framework of these rules.").

Nevertheless, the ALJ was not required to obtain vocational expert testimony. The ALJ found Mr. Brown to have the RFC "to perform a reduced range of light work, and a wide range of sedentary work" but limited to, as is relevant here, unskilled, simple, routine, repetitive tasks (id. at 15), a finding that Mr. Brown does not challenge. As substantial evidence supports, the ALJ determined that Mr. Brown's non-exertional limitations "have some effect on the occupational base of unskilled light work, [but] they have little or no effect on the occupational base of unskilled sedentary work." (Id. at 20.) Other courts have affirmed similar determinations. See, e.g., Scott v. Colvin, No. 1:12-CV-170, 2013 WL 3927607, *6 (W.D.N.C. July 29, 2013) (finding that a "limitation to simple, unskilled, entry level work that allows for less stress work without public contact or significant interaction with others would not significantly erode the occupational base represented by the Grids") (citation omitted); Eason v.

7

Astrue, No. 2:02-CV-00030, 2008 WL 4108084, *16-17 (E.D.N.C. Aug. 29, 2008 (finding no error in ALJ's reliance on the Grids where the ALJ found the claimant capable of the mental activities required by unskilled work – understanding, remembering, and carrying out simple instructions and making simple work-related decisions).

Therefore, not only did the ALJ apply the correct legal standard when using the Grids as a framework, but substantial evidence supports his findings. Vocational expert testimony was not required.

### III.

### A.

Next, Mr. Brown argues that the ALJ erred by failing to find spondylosis of the thoracic spine a severe impairment and, in the alternative, not explaining why that impairment was not severe. (Doc. #10 at 6.) He alleges in support of his argument that he was treated in March 2009 for mid lower back pain that radiated to the left side and down to his rectal area and he had a thoracic MRI in March 2009 that showed some moderate spondylosis throughout the mid back. (Doc. #10 at 6 (citing A.R. 363).)

For an impairment to be considered severe at step two, a claimant must demonstrate that it has more than a minimal effect on his ability to

8

engage in work-related activity. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

B.

Here, Mr. Brown does not challenge the RFC finding,[3] cite any additional limitation presented by his thoracic spinal spondylosis that was not incorporated into the RFC, or make any showing that the RFC is not supported by the record, nor could he. The ALJ considered Mr. Brown's consistent complaints of mid lower back and left sided radicular pain, as well as his spondylosis, and cited to, among other evidence, the records submitted by the Neuroscience Center, which included the March 2009 thoracic MRI. (A.R. 17.) This same record that Mr. Brown cites (id. at 363) further explains that while Dr. Michael Applegate found the MRI showed some moderate spondylosis throughout the mid back, there was no significant spinal stenosis or neural foraminal compression (id.). Dr.

---

[3] In addition to finding that Mr. Brown had the RFC to perform a reduced range of light work and a wide range of sedentary work, limited to unskilled, simple, routine, repetitive tasks, the ALJ also found the following: "The claimant can stand and walk for 2 hours in an 8-hour workday; he can sit for 6 hours in an 8-hour workday; and he can lift 30 pounds occasionally and 5 pounds frequently. In addition, the claimant cannot perform repetitive overhead positioning (requiring the claimant to look up). Further, the claimant must avoid a work environment requiring left peripheral vision or depth perception; however, his vision is sufficient enough for him to avoid the 'ordinary hazards of the workplace.'" (A.R. 15.)

9

Applegate recommended anti-inflammatories and pain management as treatment with follow-up on as needed basis, to which Mr. Brown responded with a preference for chiropractic care. (Id.)

The ALJ also took note of medical records from Mr. Brown's neurosurgeon, Dr. Jeffrey Jenkins. (Id. at 17.) In January 2011, Dr. Jenkins reviewed the 2009 MRI and found it demonstrated some minimal classic bulging disc without significant neural compression. (Id. at 453.)

Notably, Dr. Sandhu indicated that he had not evaluated Mr. Brown's work capacity. (Id. at 334-38.) However, Dr. David Ward, another of Mr. Brown's treating physicians, found in July 2008 that Mr. Brown could work, but that he could lift no more than 30 pounds and that he should avoid repetitive overhead positioning such as looking up for lifting. (Id. at 261.) The ALJ gave Dr. Ward's findings and opinions the greatest weight because his assessments were supported by the results of his own examinations of Mr. Brown, by the results of imaging studies, and by the other objective medical evidence of record. (Id. at 19; see also id. at 15 (RFC finding).)

In addition, although the state agency medical consultant completed a physical residual functional capacity assessment in December 2008 and found Mr. Brown capable of a wide range of light work, the ALJ disagreed with her assessment because she did not have the benefit of a complete

10

record when she made her determination. (Id. at 18.) In sum, substantial evidence supports the ALJ's findings.

## C.

Even if it were error to fail to find spondylosis a severe impairment, the error is harmless. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). A finding of a single severe impairment at step two is enough to ensure that the ALJ will progress to step three. Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Here, the ALJ found that Mr. Brown had the following severe impairments: degenerative disk disease of the cervicolumbar spine, status post anterior discectomy/decompression at C6-7, left eye blindness, and depression. (A.R. 14.) As noted above, in subsequent steps, the ALJ considered evidence of Mr. Brown's consistent complaints of mid lower back and left-sided radicular pain and the results of the thoracic MRI. Therefore,

11

because substantial evidence supports the ALJ's findings, he committed no reversible error.

IV.

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiff's Motion for Judgment on the Pleadings (Doc. #9) be DENIED and Defendant's Motion for Judgment on the Pleadings (Doc. #14) be GRANTED.

This the 11th day of September, 2015.

                                                /s/ N. Carlton Tilley, Jr.
                                        Senior United States District Judge